J-A19030-18

2019 PA Super 8

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MITCHELL GREGORY PECK, JR. | : | |
| | : | |
| Appellant | : | No. 226 MDA 2018 |

Appeal from the Judgment of Sentence Entered September 1, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000880-2017

BEFORE: GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

OPINION BY NICHOLS, J.:                    **FILED JANUARY 08, 2019**

Appellant Mitchell Gregory Peck, Jr. appeals from the judgment of sentence of twenty to forty years' imprisonment imposed after a jury found him guilty of drug delivery resulting in death.[1] Appellant contends that there was insufficient evidence to sustain his conviction under Section 2506 because the subject delivery occurred in Maryland. Appellant also challenges the discretionary aspects of the sentence. We affirm.

The facts relevant to this appeal are not in dispute. Kevin Hunt (Decedent) lived with his father, James Hunt (Mr. Hunt), in Fawn Grove, York County. Mr. Hunt last saw Decedent alive at around 9:30 p.m. on December 9, 2014, when Mr. Hunt returned home, spoke briefly with Decedent in the kitchen, and then went to bed.

---

[1] 18 Pa.C.S. § 2506.

Based on a series of text messages between Decedent and Appellant,[2] it was determined that Decedent and Appellant met later that same evening, at some time after 11:00 p.m. Appellant sent Decedent directions indicating that Appellant and Decedent met at a High's convenience store in Maryland, approximately ten miles south of the Pennsylvania border. At the meeting in Maryland, Appellant sold Decedent heroin. Following the sale, Appellant and Decedent continued to exchange text messages. Decedent expressed concern that the heroin looked like a "rock." Appellant boasted that the heroin was "off the brick, purest of pure" and told Decedent to "try it." Further messages between 11:36 p.m. to 11:47 p.m. indicated that Decedent tried the heroin, complimented Appellant, and thanked Appellant for the delivery.

On the following morning, December 10, 2014, Mr. Hunt left for work at 6:45 a.m., but did not see Decedent. Mr. Hunt returned home from work on December 10, 2014, at 6:30 p.m. Mr. Hunt checked on Decedent, but Decedent's bedroom was locked. Mr. Hunt unlocked the door, entered the room, and discovered Decedent hunched over on the floor. Mr. Hunt shook Decedent, but Decedent fell over. Decedent's body was stiff and his face was blue and had blood on it. Mr. Hunt called a neighbor who, in turn, called 911.

Pennsylvania State Police Trooper Thomas Grothey responded and found a "rock" of heroin on Decedent's nightstand and Decedent's cell phone

---

[2] Appellant and Decedent had been friends since elementary school. Appellant was twenty-two years old at the time of the offense. Decedent was twenty-three years old at the time of his death.

on the floor of Decedent's bedroom. Trooper Grothey read the text messages between Decedent and Appellant from Decedent's phone.

A criminal complaint was filed against Appellant on September 6, 2016. The Commonwealth filed an information charging Appellant with delivery of heroin (Count 1) and drug delivery resulting in death (Count 2) on February 9, 2017.

On July 7, 2017, Appellant filed a motion to dismiss Count 1. Specifically, Appellant asserted that the trial court did not have subject matter jurisdiction over "a matter that allegedly took place" in Maryland. Mot. to Dismiss Count 1, 7/7/17, ¶ 4. Appellant conceded that neither "[t]he location of the alleged delivery, nor the dismissal of Count 1 of the Information will have any effect upon Count 2 of the Information." *Id.* at ¶ 6.

On July 17, 2017, the trial court entered an order dismissing Count 1 without prejudice.[3] Immediately thereafter, Appellant proceeded to a jury trial on Count 2 for drug delivery resulting in death. On July 19, 2017, the jury found Appellant guilty.

On September 1, 2017, the trial court sentenced Appellant to a statutory maximum sentence of twenty to forty years' imprisonment. Appellant timely filed post-sentence motions requesting, in relevant part, the dismissal of the

---

[3] The order indicated that the Commonwealth agreed that the trial court did "not have jurisdiction over the delivery charge since that occurred in the State of Maryland or at least is alleged to have occurred [in Maryland]." Order, 7/17/17.

conviction or a resentencing hearing. The trial court denied Appellant's post-sentence motions on January 26, 2018.

Appellant timely appealed and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. This appeal followed.

Appellant presents the following issues for review:

[1.] Whether the evidence was insufficient to sustain [Appellant's] conviction for drug delivery resulting in death where the charge was premised on a delivery occurring in Maryland, and thus did not satisfy the element that the delivery was in violation of Pennsylvania's Controlled Substance, Drug, Device, and Cosmetic Act.

[2.] Whether the trial court erred in imposing the statutory maximum sentence based principally on factors inherent in the offense of drug delivery resulting in death: the sale of drugs and the death of the victim.

Appellant's Brief at 4.

Appellant first raises a challenge to the sufficiency of the evidence. Appellant claims that a violation of Pennsylvania's Controlled Substance, Drug, Device, and Cosmetic Act (CSDDCA) is a necessary element of drug delivery resulting in death. *Id.* at 14. Appellant continues that "the only delivery here, however, occurred in Maryland" and suggests that he could not be convicted for that delivery under Pennsylvania's CSDDCA. *Id.* Appellant therefore asserts that his conviction for drug delivery resulting in death must also fail as a matter of law. *Id.*

Notably, Appellant goes to some length to distinguish his sufficiency claim from a jurisdictional analysis under 18 Pa.C.S. § 102, which defines the

- 4 -

territorial applicability of Pennsylvania's Crimes Code.  ***Id.*** at 15-16.  Appellant asserts that an analysis of Section 102 "conflate[es] jurisdiction" with his argument based on "proof of an essential element of the offense."  ***Id.*** at 16.

The Commonwealth responds that under Section 102, the trial court properly exercised jurisdiction based on Decedent's death in Pennsylvania. Commonwealth's Brief at 21.  The Commonwealth suggests that under Section 102(a)(1), the fact that Decedent died in Pennsylvania made the location of the delivery irrelevant to Appellant's liability under Section 2506 in Pennsylvania.  ***See id.***  The Commonwealth summarizes its position as follows: "[Appellant] sold heroin to [Decedent] and [Decedent] died in Pennsylvania as a result of using that heroin, Pennsylvania properly exercised subject matter jurisdiction over [Appellant] and [Appellant] was criminally liable for [Decedent]'s death."  ***Id.***

A challenge to the sufficiency of the evidence requires this Court to determine "whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's finding of all the elements of the offense beyond a reasonable doubt."  ***Commonwealth v. Packer***, 168 A.3d 161, 163 n.3 (Pa. 2017) (citation and quotation marks omitted).

The provision criminalizing a drug delivery resulting in death is set forth under Chapter 25 of the Crimes Code, which relates to homicide.[4] Section 2506 states, in relevant part:

> **(a) Offense defined.—**A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64),[] known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S. § 2506. Section 2506 "consists of two principal elements: (i) [i]ntentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by ('resulting from') the use of that drug."[5]

_____

[4] Section 2501 defines "criminal homicide" as "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501(a).

[5] We note that a former version of Section 2506 explicitly defined a drug delivery resulting in death as murder of the third degree. **_See Commonwealth v. Ludwig_**, 874 A.2d 623, 629-31 (Pa. 2005) (holding that former version of Section 2506 required the Commonwealth to establish malice due to the statute's express reference to drug delivery resulting in death as murder of the third degree). However, the current version of the Section 2506 does not expressly classify drug delivery resulting in death as a recognized category of homicide. **See** 18 Pa.C.S. § 2506(a); **_see also_** 18 Pa.C.S. § 2501(b) (indicating that "[c]riminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter."). Therefore, under the present version of Section 2506, the Commonwealth must demonstrate that a defendant was at least "reckless" as to the death caused by the use of an illicitly delivered drug. **_Commonwealth v. Kakhankham_**, 132 A.3d 986, 995 (Pa. Super. 2015). Because "the dangers of heroin are so great and well-known," this Court has concluded that a delivery of heroin alone

*Commonwealth v. Kakhankham*, 132 A.3d 986, 991-92 (Pa. Super. 2015) (citation and footnote omitted).

The territorial applicability of Pennsylvania Crimes Code is defined in Section 102, which states, in relevant part:

> **(a) General rule.**—Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:
>
> > (1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth[.]
>
> * * *
>
> **(c) Homicide.**—When the offense is homicide or homicide of an unborn child, either the death of the victim, including an unborn child, or the bodily impact causing death constitutes a "result" within the meaning of paragraph (a)(1) of this section, and if the body of a homicide victim, including an unborn child, is found within this Commonwealth, it is presumed that such result occurred within this Commonwealth.

18 Pa.C.S. § 102(a)(1), (c).

Instantly, Appellant has not demonstrated that the elements of Section 2506 preclude a conviction for drug delivery resulting in death where the drug delivery occurred outside of Pennsylvania. Section 102 clearly establishes that acts occurring outside of Pennsylvania may be subject to criminal prosecution in Pennsylvania, particularly when a death occurs within Pennsylvania. ***See*** 18 Pa.C.S. § 102(c). Contrary to Appellant's assertion, an analysis of Section

---

satisfies the recklessness requirement when a death occurs as a result of the sale." ***Commonwealth v. Storey***, 167 A.3d 750, 757 (Pa. Super. 2017) (citation omitted).

102 is critical to determine whether (1) the trial court properly exercised subject matter jurisdiction to convict him of an offense under Section 2506, *see Commonwealth v. Seiders*, 11 A.3d 495, 496-97 (Pa. Super. 2010), and (2) the evidence presented was sufficient to sustain the conviction based on Decedent's death in Pennsylvania.

Here, the Commonwealth presented evidence that (1) although the conduct, *i.e.*, the delivery, occurred in Maryland, it was in violation of Pennsylvania's CSDDCA, (2) a death resulted from the delivery, and (3) Appellant acted recklessly when causing Decedent's death. *See Storey*, 167 A.3d at 757. Therefore, even if the trial court lacked jurisdiction to convict Appellant of the delivery under Section 102, the Commonwealth still established the sufficiency of the evidence of a drug delivery resulting in death. *See Packer*, 168 A.3d at 161 n.3. Accordingly, we find no merit to Appellant's sufficiency of the evidence challenge based solely on the fact that the predicate drug delivery occurred outside Pennsylvania.

Appellant next challenges the discretionary aspects of the sentence. Appellant argues that the trial court improperly relied on the facts that Appellant sold Decedent a "deadly drug" and that the delivery resulted in death when imposing a statutory maximum sentence of twenty to forty years' imprisonment.[6] Appellant's Brief at 21. According to Appellant, this resulted

---

[6] The offense gravity score of drug delivery resulting in death was 13 and Appellant's prior record score was 5. The sentencing guidelines suggested a

in a "double counting" of sentencing factors. ***Id.*** at 21-23 (citing ***Commonwealth v. Goggins***, 748 A.2d 721, 732 (Pa. Super. 2000) (*en banc*), and ***Commonwealth v. Johnson***, 758 A.2d 1214, 1219 (Pa. Super. 2000)). Specifically, Appellant asserts that there was "little about" the present offense "that was worse than any other" drug delivery resulting in death. ***Id.*** Appellant notes that the trial court's references to the need to protect society and deterring the conduct of others were accounted for in the offense and failed to establish a proper basis to aggravate the sentence based on the circumstances of the present offense. ***Id.*** at 23.

Additionally, Appellant contends that the trial court impermissibly relied on his prior drug convictions. ***Id.*** at 22-23. Lastly, Appellant contends that the trial court's consideration of the potency of the heroin and the fact that Appellant and Decedent were friends did not warrant an extreme departure from the sentencing guidelines. ***Id.*** at 23-24.

It is well settled that

[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's

---

standard range minimum sentence of 8 to 9½ years, plus or minus 1 year for aggravating or mitigating factors. Therefore, the trial court's sentence was outside the sentencing guidelines.

brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

***Commonwealth v. Proctor***, 156 A.3d 261, 273 (Pa. Super. ) (some citations omitted), *appeal denied*, 172 A.3d 592 (Pa. 2017). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation omitted).

Instantly, Appellant has preserved his sentencing issues in a post-sentence motion, a timely appeal, and a Rule 2119(f) statement in his brief. ***See id.*** Furthermore, Appellant's assertions that the trial court relied on improper sentencing factors raise substantial questions for our review. ***See Goggins***, 748 A.2d at 732.

Our review is governed by the following principles:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but i[s] not bound by the Sentencing Guidelines. . . . A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the

particular offense as it relates to the impact on the life of the victim and the community." When a court chooses to depart from the guidelines however, it must "demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines." Further, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines."

When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. An appellate court must vacate and remand a case where it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.[] § 9781(c)(3).

***Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa. Super. 2008) (some citations omitted). The inquiry into the reasonableness of a sentence is difficult to define. ***Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007).

When reviewing the record, 42 Pa.C.S. § 9781 requires that we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

"[A] sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors." ***Walls***, 926 A.2d at 964. Additionally, a sentence may also be unreasonable if it was imposed "without express or implicit consideration" of the protection of the public, the rehabilitative needs

of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community as required by 42 Pa.C.S. § 9721(b).[7] *Id.*

> This Court has held that
>
> [w]here the trial court deviates substantially from the sentencing guideline range "it is especially important that the court consider all factors relevant to the determination of a proper sentence." Such factors justifying an upward departure, however, may not include those already taken into account in the guidelines['] calculations.

*Commonwealth v. Messmer*, 863 A.2d 567, 573 (Pa. Super. 2004) (citations omitted). However, this Court should not reweigh the proper sentencing factors considered by the trial court and impose our own judgment in the place of the trial court. *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009).

Here, the trial court provided the following statement before imposing sentence:

> Well, we've listened carefully to everything said this morning in this courtroom regarding this sentencing hearing or regarding the sentencing of [Appellant], and, again, we've read and reviewed

---

[7] The *Walls* Court cautioned:

> Even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Walls*, 926 A.2d at 964.

the pre-sentence investigation report as well as [the] Commonwealth's [sentencing] memorandum.

In sentencing anyone who's committed a crime, this [c]ourt takes into consideration the nature of the crime, the probability or possibility of rehabilitating the criminal, and the need to protect society. The crime charged for which [Appellant] has been convicted is a very serious crime. It's a first-degree felony, as, for example, is third-degree murder. Both those crimes carry the same statutory maximum of 20 to 40 years['] incarceration.

[Appellant] in this case caused the death of an old friend by selling him heroin. [Appellant]'s prior record score indicates that he has in the past been involved in trafficking of drugs and, in fact, has been convicted on several occasions for those kinds of offenses. We recognize that [Appellant] here today, after spending several years in incarceration, indicates that he regrets committing this crime and is remorseful, but there's nothing in the record of the trial or in the pre-sentence investigation report that would indicate that prior to today he's expressed any remorse, and we well understand that drug addiction may be an explanation for why a crime was committed but is no excuse for the commission of the crime.

We would posit that there are many drug addicts who, in fact, do not engage in the trafficking of drugs or the business of drug selling, and while the [Appellant] today has indicated that he on several occasions asked the authorities for help to deal with his drug addiction and claims he was turned down, there's nothing to indicate that during the time that he was addicted and not incarcerated, he, himself, took any initiative to try to deal with his drug addiction.

We do not consider [Appellant] a good prospect for rehabilitation since the history of [Appellant] and his addiction indicates that apparently since his addiction came to fruition, the only time he's been clean is when he's been incarcerated.

Finally, a young man is dead because of [Appellant]'s actions. [Appellant] sold the victim in this case a deadly drug. He was, in fact, a peddler of death.

Finally, we believe the protection of society from this individual is of paramount concern in this particular case given the circumstances. [Appellant] has had several chances to mend his ways to stop dealing in drugs, but apparently to no avail. I'm

- 13 -

firmly convinced that society is safer with [Appellant] incarcerated rather than not. And while I'm certainly sympathetic to the other people still living that [Appellant] has hurt through his criminal actions, I cannot give more consideration to those hurts than I can give to the danger he poses to the public.

And I would point out that clearly his actions were predatory in nature. They were preying upon a very vulnerable group of people, those who are addicted to drugs. [Appellant] didn't have to sell that purest of the pure heroin to his old friend that night, but he did it. He bragged about it. He touted the quality of the merchandise he was selling as much as a car salesman would tout the quality of the car he's seeking to sell to a customer.

Society should not have to take another chance that this [Appellant], when left to his own devices, will not simply return to his drug dealing ways. Therefore, we impose the following sentence, and we hope that the sentence we are about to impose will, in fact, deter those who seek to make an easy buck selling deadly poison to drug addicts or even those who seek an easy way to support their own drug habits by selling those deadly drugs. As [defense counsel] aptly pointed out, there are many addicts who do not turn to crime, but [Appellant] in this case certainly has, and it's not the first time.

. . . [Appellant]'s prior record score is 5 but, as [the Commonwealth] pointed out, does not take into consideration the number of prior drug trafficking and drug-involved crimes that make up that prior record score. . . .

We are satisfied given the considerations just mentioned by this Court that the [Appellant]'s conduct, not only regarding this crime, but prior crimes for which he has committed, as well as what would appear to be his poor prospects for rehabilitation when not incarcerated, and the need for the protection of society from him, as well as the deterrent effect of the sentence about to be imposed will have, we sentence the [Appellant] to the maximum 20 to 40 years['] incarceration in a state correctional institution. . . .

N.T., 9/1/17, at 19-23.

Following our review of the factors set forth in Section 9781(d), we conclude that the trial court properly considered the nature and circumstances

- 14 -

of the offense and the history and characteristics of Appellant, as well as the sentencing guidelines. *See* 42 Pa.C.S. § 9781(1). Moreover, the court had ample opportunity to observe Appellant at trial and sentencing, and it had the benefit of a pre-sentence investigation report. *See id.* The court's reasons for its sentence expressed an appropriate consideration of the protection of the public, the gravity of the offense as it related to the impact on the life of Decedent and on the community, and the rehabilitative needs of Appellant. *See* 42 Pa.C.S. § 9721(b).

Contrary to Appellant's arguments, we do not find the trial court's reasons to be improper or unreasonable. The court's explanation for its sentence included proper aggravating factors, such as the nature of the drug that Appellant sold, Appellant's salesmanship of the heroin he sold, and Appellant's existing relationship with Decedent. The court's references to Appellant's prior convictions for drug offenses were proper, as the specific nature of those offenses was relevant to the court's consideration of Appellant's rehabilitative potential.[8] *See Messmer*, 863 A.2d at 573 (noting

---

[8] Appellant relies on *Goggins* to support his claim that the trial court improperly double counted his prior drug convictions. We note that *Goggins* held that the trial court's references to the defendant's prior convictions in that case were improper where those factors were accounted for in a mandatory minimum sentence based, in part, on the defendant's prior convictions. *See Goggins*, 748 A.2d at 732. In *Johnson*, this Court held that the defendant's prior rape conviction was a pre-condition of his conviction for failing to register. *Johnson*, 758 A.2d at 1218. Therefore, *Johnson* concluded that there was no double counting in that case. *Id.* Thus, although *Goggins* and *Johnson* state the general principles against double counting sentencing factors, they are not controlling in this case.

that although the prior record score accounted for the defendant's prior driving-under-the-influence convictions, the score did not reflect the defendant "complete absence of regard for the law" and the need to protect the public). Similarly, the court's reference to deterrence was adequately related to the protection of the public in light of Appellant's poor rehabilitative potential. Accordingly, we see no merit to Appellant's claim that the trial court double counted factors already included in the sentencing guidelines. ***See id.***

Therefore, following a review of the record, and mindful of our standard of review, we see no reason to disturb the trial court's decision to impose a maximum sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/8/2019