J-A12020-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD ELLIS CARTER, JR. | : | |
| | : | |
| Appellant | : | No. 848 WDA 2018 |

Appeal from the Judgment of Sentence February 7, 2018
In the Court of Common Pleas of Clarion County Criminal Division at
No(s): CP-16-CR-0000383-2016

BEFORE: BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.: FILED OCTOBER 28, 2019

Appellant, Todd Ellis Carter, Jr., appeals from the Judgment of Sentence of nine to eighteen years of incarceration, entered on February 7, 2018, following his conviction of two counts of Delivery of a Controlled Substance, one count of Possession with Intent to Deliver, and two counts of Criminal Use of Communication Facility.[1] We affirm.

We adopt the following statement of facts from the trial court's Opinion, issued in support of its Order denying Appellant's Post-Sentence Motion, which, in turn, finds support in the record:

> On the evening of January 14, 2016, Logan Scott, Tyler Wolfe[,] and Tanner Stark went to Allegheny County[,] and Scott bought heroin from [Appellant]. Scott talked by cell phone with [Appellant] to arrange the deal. The heroin was packaged in

_____

[1] 35 P.S. § 780-113(a)(3); 18 Pa.C.S. § 7512(a), respectively.

stamp bags marked "Essence." Following the purchase, Scott, Wolfe[,] and Stark returned to Clarion [County].

On the morning of January 15, Tanner Stark's mother found him dead on the floor of his bedroom. The police investigated and found five empty stamp bags[,] . . . three full stamp bags[,] and a syringe in Stark's bedroom. The stamp bags were marked "Essence."

The State Police made arrangements with Logan Scott to make a controlled buy of heroin from [Appellant] on the evening of January 15. Scott again communicated with [Appellant] by cell phone. Scott completed the controlled buy[,] and the [p]olice arrested [Appellant] and took him into custody. The stamp bags Scott obtained were marked "Essence." The police found additional stamp bags of heroin in [Appellant's] car. They seized [Appellant's] cell phone.

State Police testing showed that the stamp bags found in Tanner Stark's bedroom, the bags that Scott obtained on January 15[,] and the bags in [Appellant's] car contained heroin. Upon completion of testing of Stark's blood and an autopsy, the coroner determined the manner of Stark's death was heroin toxicity.

The State Police filed charges against [Appellant] in Allegheny County based on possession and delivery of heroin. Also, a statewide investigating grand jury received evidence and recommended the filing of charges of Drug Delivery Resulting in Death[2][, as well as the crimes set forth above.] The supervising judge [of the grand jury] ordered that the [c]ounty for conducting the trial on those charges would be Clarion County. The Commonwealth then filed the charges [in Clarion County].[3]

Trial Ct. Op., filed 5/7/18, at 1-2.

Appellant filed a Motion for Change of Venue/Jurisdiction, asserting that venue was improper because the Commonwealth did not allege that Appellant

_____

[2] 18 Pa.C.S. § 2506.

[3] Accordingly, the Commonwealth did not pursue the charges filed previously in Allegheny County.

- 2 -

had committed any acts in Clarion County constituting the offenses charged. The trial court denied Appellant's Motion. Trial Ct. Order, 10/13/16. Appellant also filed a Motion in Limine, seeking to exclude any out-of-court or in-court identification of Appellant by Tyler Wolfe. This Motion, too, the trial court denied. Trial Ct. Order, 12/18/17.

Trial commenced in December 2017. Following trial, a jury acquitted Appellant of the Drug Delivery Resulting in Death charge but convicted him of all other charges. Thereafter, the trial court sentenced Appellant as set forth above.

Appellant timely filed a Post-Sentence Motion, seeking an acquittal or, in the alternative, reconsideration of the sentence imposed. The trial court denied Appellant's Post-Sentence Motion. Trial Ct. Order, 5/7/2018. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement; the trial court issued a responsive Opinion.

Appellant raises the following issues, which we have restated and abbreviated for clarity:

1. Whether the trial court erred in denying Appellant's Motion for Change of Venue/Jurisdiction, where all of his alleged acts occurred in Allegheny County;

2. Whether the trial court abused its discretion in sustaining the Commonwealth's objection to Appellant's use of a mobile phone extraction report during cross-examination of a witness, where the court had previously admitted the report into evidence without objection by the Commonwealth;

3. Whether the trial court erred in denying Appellant's Motion in Limine that sought to preclude a witness's in-court identification of Appellant;

4. Whether the trial court erred in determining that the Commonwealth had presented sufficient evidence to establish that Appellant had delivered heroin on January 14, 2016; and

5. Whether the trial court improperly relied on inflammatory, inaccurate, and prejudicial remarks in crafting Appellant's sentence.

See Appellant's Br. at 5-6.

In his first issue, Appellant contends the trial court erred in denying his Motion for Change of Venue/Jurisdiction. Id. at 23. According to Appellant, the Commonwealth failed to introduce evidence that he had committed any overt act in Clarion County. Id. at 24. Rather, according to Appellant, the Commonwealth alleged acts committed by him solely in Allegheny County. Id. at 29-31, 36-37. Therefore, Appellant concludes, he is entitled to a new trial in Allegheny County. No relief is due.

Where a statewide grand jury returns a presentment recommending charges against an individual, "the supervising judge shall select the county for conducting the trial" from among those counties where venue is appropriate. 42 Pa.C.S. § 4551(d). As noted by Appellant, this initial selection is subject to review. See, e.g., Commonwealth v. Katsafanas, 464 A.2d 1270, 1275-77 (Pa. Super. 1983) (addressing whether the supervising judge of a multicounty investigating grand jury had selected an appropriate county for trial).

"Venue in a criminal action properly belongs in the place where the crime occurred." Commonwealth v. Gross, 101 A.3d 28, 33 (Pa. 2014) (citation omitted). Defendants may seek transfer of proceedings to another judicial

district due to prejudice or pre-trial publicity. Id. "Such decisions are generally left to the trial court's discretion." Id. However, where a defendant challenges venue based on the locality of a crime, the Commonwealth must prove the locus of the crime by a preponderance of the evidence. Id. Thus, similar to other pretrial motions, appellate review "should turn on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error." Id. at 33-34 (citation omitted).

Recently, in Commonwealth v. Graham, 196 A.3d 661 (Pa. Super. 2018), this Court addressed a proper venue question under circumstances quite similar to those present in this case. In Graham, the defendant travelled with two companions from Centre County to Clinton County in order to obtain heroin. Id. at 662. The defendant purchased twenty-two bags of what he believed was heroin, then gave fourteen of those bags to one of his companions. Upon her return to Centre County, this companion ingested eight bags of the substance, which turned out to be fentanyl, and subsequently died of a fentanyl overdose. Id.

Prosecutors charged the defendant in Centre County with Drug Delivery Resulting in Death, Possession with Intent to Deliver, and Delivery of a Controlled substance. Id. The defendant filed a motion to transfer venue, asserting that venue in Centre County was improper and that the case should proceed in Clinton County. Id. at 662-63. The trial court granted the motion, reasoning that, while the victim died in Centre County, the only overt act by the defendant had occurred in Clinton County. Id. at 665.

On appeal, we rejected the trial court's reasoning. Rather, we observed that, pursuant to 18 Pa.C.S. § 102, "venue is proper in a county where either an element of an offense or a required result occurs." Id. at 664 (emphasis in original). Regarding the charge of Drug Delivery Resulting in Death, we recognized "two principal elements: (1) an intentional conveyance of any controlled substance or counterfeit controlled substance, and (2) death resulting from the use of the conveyed substance." Id. at 665 (citation omitted). Thus, under the alleged facts of the case, we concluded that venue was proper either in Clinton County, where the defendant had conveyed a controlled substance to his companion, or in Centre County, where the companion had ingested the controlled substance and died. Id.

In this case, following a hearing, the trial court found that the alleged drug transactions occurred in Allegheny County but that Tanner Stark had died from heroin toxicity in Clarion County. See Trial Ct. Op., filed 10/13/16, at 1. The court conceded that venue is not proper in a county where only an effect of an alleged crime has materialized but rejected Appellant's assertion that Stark's death was a mere effect of the crimes charged in this case. Id. at 2-3. Rather, the trial court reasoned that "Stark's death is a crucial element of one of the crimes with which [Appellant] is charged." Id. at 3. We agree.

Appellant does not dispute the relevant factual findings of the trial court, i.e., the loci of the two principal elements of the Drug Delivery Resulting in Death charge. Appellant concedes that the drug transactions, alleged to have occurred in this case, occurred in Allegheny County, while the victim's death

occurred in Clarion County. See, e.g., Motion for Change of Venue/Jurisdiction, 9/8/16, at ¶¶ 2, 5; Appellant's Br. at 28-29.[4] Based on these findings, venue was proper in Clarion County. See Graham, 196 A.3d at 664-65; see also, e.g., Commonwealth v. Peck, 202 A.3d 739, 743-44 (Pa. Super. 2019) (rejecting challenge to sufficiency of evidence relative to Drug Delivery Resulting in Death, where delivery of narcotics occurred in Maryland but death occurred in Pennsylvania). Accordingly, we discern no legal error in the trial court's conclusion. See Gross, 101 A.3d at 33.

In his second issue, Appellant contends the trial court abused its discretion when it determined that certain text messages included in a cell phone extraction report constituted inadmissible hearsay and, therefore, precluded Appellant from introducing them during his cross-examination of a Commonwealth witness. Appellant's Br. at 39. According to Appellant, because the court had previously admitted this extraction report without objection from the Commonwealth, the individual text messages contained therein were admissible and worthy "of such probative value as [they] may have under all the circumstances." Id. at 46 (quoting Poluski v. Glen Alden

_____

[4] Appellant does not repeat his prior assertion that Stark's death was a mere effect of the crimes charged. See Appellant's Br. at 23-38.

Coal Co., 133 A. 819, 820 (Pa. 1926). For the following reasons, we disagree.[5]

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." Commonwealth v. Mosley, 114 A.3d 1072, 1082 (Pa. Super. 2015). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." Commonwealth v. Weakley, 972 A.2d 1182, 1188-89 (Pa. Super. 2009).

> Pennsylvania Rule of Evidence 105 provides the following:
>
> If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly. The court may also do so on its own initiative.

Pa.R.E. 105; see also, e.g., Commonwealth v. Serge, 896 A.2d 1170, 1185-87 (Pa. 2006) (advising trial courts to give limiting instructions to jurors regarding probative value of computer-generated animation); Aldridge v. Edmunds, 750 A.2d 292, 296-97 (Pa. 2000) (recognizing that the trial court should carefully limit an expert's reference to learned treatises).

---

[5] To be clear, Appellant challenges the trial court's authority to rule on the text messages' admissibility; he concedes or fails to address whether the messages constitute hearsay, and we decline to address the matter sua sponte.

Further background is necessary to place our analysis in the proper context. Ms. Laura Taylor testified as an expert witness for the Commonwealth in the field of forensic digital analysis. N.T. Trial, 12/15/17, at 239. At trial, she testified that she had successfully created an extraction report, documenting all electronic data stored on a cell phone belonging to Commonwealth witness Tyler Wolfe. Id. at 240-43. This data included call logs and text messages. Id. at 243. Based on this report, Taylor testified that were no communications between Wolfe and Appellant, including on January 14, 2016, when the initial transaction occurred. Id. at 256.[6]

On cross-examination, Taylor discussed in further detail the manner in which her cell phone extraction report documented text message communications between the Wolfe phone and others. Id. at 261-67. Appellant did not seek to authenticate these communications or establish their relevance, nor did Appellant ask Taylor to read any of those messages into evidence. See, e.g., Commonwealth v. Koch, 39 A.3d 996, 1004-07 (Pa. Super. 2011) (discussing the admissibility of text messages). Rather, he focused solely on the fact that the report showed that text message communications had occurred between various individuals. Upon completing this cross-examination, Appellant successfully moved the extraction report

---

[6] By way of contrast, Taylor examined phones belonging to Appellant and Commonwealth witness Logan Scott and testified to numerous text messages between those individuals' phones. Id. at 252-56.

into evidence, without objection by the Commonwealth. N.T. Trial, 12/15/17, at 267.

Thereafter, Wolfe testified on behalf of the Commonwealth. See generally N.T. Trial, 12/18/17, at 23-78. During cross-examination, Appellant sought to have Wolfe read two text messages, documented in the cell phone extraction report, into the record.[7] See id. at 49-51. The following exchange occurred:

> Q. And it says, can you read the message from Drew as it is stated on this extraction report?
>
> [Commonwealth]: Objection, You Honor. Hearsay.
>
> [Counsel for Appellant]: Your Honor, it's been admitted as an exhibit. There can be no hearsay objection because the document has been admitted as an exhibit, and so it is fair to question him about it.
>
> The [Trial] Court: The objection is sustained.

Id. at 50 (emphasis added), see also id. at 51 (the trial court precluding Wolfe from reading a second text message into evidence).

In support of its decision to sustain the Commonwealth's hearsay objections, the trial court relied upon its "authority to decide the proper uses of admitted exhibits." Trial Ct. Op., filed 9/24/18, at 2 (unpaginated) (referencing the limited admissibility of certain expert reports). In our view, the trial court's analysis evokes the authority set forth in Rule 105, supra.

---

[7] Wolfe did not author these messages. Purportedly, Wolfe received these messages from Drew Scott, brother of Logan Scott, who was characterizing Logan Scott's interactions with police investigating Tanner Stark's death. See Defense Exhibit B, Wolfe Cell Phone Extraction Report, at 18.

For this reason, Appellant's reliance on Poluski is misplaced. In that case, the Workmen's Compensation Board awarded compensation to the deceased employee of the defendant coal company. Poluski, 133 A. at 819. On appeal, the coal company challenged the award, asserting that there was no competent evidence to sustain a finding of compensable injury. Id. Our Supreme Court agreed that the evidence tending to prove that the employee's injury occurred in the course of his employment was hearsay but observed that the coal company had waived any objection on hearsay grounds. Id. at 19-20. Under such circumstances, the Supreme Court held that "the evidence is then competent to the full extent of such probative value as it may have under all the circumstances." Id. at 20.[8]

In that case, per strategy or error, the defendant coal company had preserved no objection to the disputed evidence, yet sought to challenge a settled evidentiary record on appeal. In contrast, Appellant in this case had not questioned Ms. Taylor regarding any specific text messages, nor did he seek to highlight these messages for the jury. Thus, any evidentiary purpose Appellant ascribed to these messages remained murky, and their probative

_____

[8] More contemporary cases have cited Poluski favorably. See, e.g., Commonwealth v. Farquharson, 354 A.2d 545, 552 (Pa. 1976) (noting that hearsay testimony from wife of the deceased concerning his difficulties with the appellant, admitted without objection, "may be given its natural and probative effect as if it was in law admissible"); Commonwealth v. Foreman, 797 A.2d 1005, 1012 (Pa. Super. 2002) (noting that the trial court was free to believe police detective's testimony that certain motorcycle parts recovered from the defendant's repair shop were stolen, even though he had relied on hearsay statements from earlier, years-old police reports).

value was not yet an issue for the trial court. Thus, the Commonwealth remained free to challenge their admissibility, and their admissibility remained subject to the court's discretion.

When Appellant attempted to introduce the substance of these messages, Appellant's purpose came into clear focus; the Commonwealth timely challenged Appellant's efforts; and the trial court was empowered to evaluate whether the extraction report was subject to limitation. Pa.R.E. 105. For these reasons, we conclude that Appellant has not established an abuse of the court's discretion. Mosley, 114 A.3d at 1082.

In his third issue, Appellant contends the court erred when it denied his Motion in Limine, seeking to preclude an in-court identification of Appellant by Tyler Wolfe. Appellant's Br. at 57. According to Appellant, Wolfe's grand jury testimony demonstrated that he could not make a reliable in-court identification of Appellant during trial. Id. at 58.[9] Because of the prejudice Appellant suffered as a result of Wolfe's identification, Appellant seeks a new trial. Id. at 70-71.

Evidence is relevant if it tends to make a material fact more or less probable. Relevant evidence is generally admissible; however, the trial court may exclude relevant evidence if its probative value is outweighed by unfair

---

[9] During his grand jury testimony, Wolfe conceded that he was unsure whether he could identify Appellant and that police had never presented him with a picture of Appellant for identification. See N.T. Trial, 12/18/17, at 52-55 (discussing his grand jury testimony)

prejudice.  See Pa.R.E. 401-403; Commonwealth v. Jordan, 65 A.3d 318, 324 (Pa. 2013).

We review the denial of a motion in limine challenging the admissibility of evidence for an abuse of discretion.  Commonwealth v. Hitcho, 123 A.3d 731, 747 (Pa. 2015) (citation omitted); Commonwealth v. Stokes, 78 A.3d 644, 654 (Pa. Super. 2013).  "[I]n exercising its discretion, the trial court must balance the evidentiary value of the evidence against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury."  Hitcho, 123 A.3d at 747-48 (citation omitted); see Pa.R.E. 403.

Upon review, Appellant's legal argument is untenable.  Although he reasonably notes the "vagaries of eye-witness identification," Appellant proceeds to reference legal analysis developed to evaluate the prejudice arising from unduly suggestive, out-of-court identification procedures.  See Appellant's Br. at 59-61.  Such analysis is irrelevant here because Tyler Wolfe never identified Appellant prior to trial.

For example, Appellant cites Neil v. Biggers, 409 U.S. 188 (1972), Appellant's Br. at 60, a seminal case in which the United States Supreme Court applied a multi-factor test to evaluate whether a victim's in-court identification of her assailant was independently sound or irreparably tainted by a prior, unduly suggestive procedure orchestrated by police.  409 U.S. at 199-200. Similarly misplaced is Appellant's reliance on Commonwealth v. Davis, 17 A.3d 390 (Pa. Super. 2011).  See Appellant's Br. at 61.  In Davis, this Court

applied the Biggers factors to ensure an "in-court identification resulted from the criminal act and not the suggestive [out-of-court] identification procedure"). Id. at 394 (citation, quotation marks, and brackets omitted).

In this case, there is no evidence in the record that Wolfe's identification of Appellant at trial suffered from similar pre-trial, out-of-court, suggestive procedures addressed in these cases. See Biggers, 409 U.S. at 195 (describing a suggestive "showup" in which detectives escorted the assailant past the victim while directing him to say, "shut up or I'll kill you"); Davis, 17 A.3d at 394 (describing a photo array of three photos, including the suspect, an individual already known by the witness, and a "much older, bald man"). Rather, as highlighted by Appellant, police never conducted a lineup or otherwise requested that Wolfe identify Appellant prior to trial. See Appellant's Br. at 62-66 (quoting N.T. Trial, 12/18/17, at 52-55; citing N.T. Trial, 12/14/17, at 152-53). Thus, Appellant's argument is not persuasive.

Nevertheless, the record supports Appellant's concern that Wolfe could not accurately identify Appellant at trial. See, e.g., N.T. Trial, 12/18/17, at 52-55 (Wolfe conceding on cross-examination that he was unsure previously whether he could identify Appellant because, inter alia, he had only viewed Appellant from a distance and, at the time of the crime, he was using heroin every day). Accordingly, we briefly note the following.

It is well settled that "evidence of identification . . . needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight." Commonwealth v.

Hickman, 309 A.2d 564, 566 (Pa. 1973); Commonwealth v. Ovalles, 144 A.3d 957, 969 (Pa. Super. 2016); Commonwealth v. Minnis, 458 A.2d 231, 233 (Pa. Super. 1983). To address uncertainty in identification testimony, our Supreme Court has required a charge warning the jury to consider such testimony with caution. Commonwealth v. Kloiber, 106 A.2d 820, 827 (Pa. 1954) (identifying three instances in which a cautionary charge is necessary: where the witness (1) did not have an opportunity to clearly view the defendant, (2) equivocated on the identification of the defendant, or (3) previously had difficulty identifying the defendant).

There is no question that Wolfe's identification testimony was relevant. See Jordan, 65 A.3d at 324; Hickman, 309 A.2d at 566 ("Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction."). However, upon considering Wolfe's testimony, the trial court recognized there was evidence that he lacked a good opportunity to observe Appellant and, therefore, agreed to provide the jury with a Kloiber instruction, warning that the jury should consider Wolfe's testimony with caution. N.T. Trial, 12/19/17, at 82-88, 150-51. We discern no error or abuse of the court's discretion in this regard. See Hitcho, 123 A.3d at 747; Kloiber, 106 A.2d at 827. Accordingly, Appellant's request for a new trial warrants no relief.

In his fourth issue, Appellant contends the evidence was insufficient to establish that he delivered heroin to Logan Scott on January 14, 2016. Appellant's Br. at 71-72. According to Appellant, the only evidence of his guilt

consists of the testimony provided by Logan Scott and Tyler Wolfe which, he asserts, was so unreliable that the jury could not find that the Commonwealth had met its evidentiary burden. Id. Appellant's brief argument suffers from several deficiencies and is substantively without merit. Thus, no relief is due.

We examine a sufficiency claim to determine "whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's finding of all the elements of the offense beyond a reasonable doubt." Peck, 202 A.3d at 743 (quoting Commonwealth v. Packer, 168 A.3d 161, 163 n.3 (Pa. 2017)).

We defer to the fact-finder's credibility determinations. "[W]hile passing upon the credibility of witnesses and the weight of the evidence produced[, the fact-finder] is free to believe all, part or none of the evidence." Commonwealth v. Bostick, 958 A.2d 543, 560 (Pa. Super. 2008) (quoting Commonwealth v. Smith, 956 A.2d 1029, 1035-36 (Pa. Super. 2008) (en banc). Further, the Commonwealth may rely on wholly circumstantial evidence to sustain its burden of proof. Id. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Id.

To establish Delivery of a Controlled Substance, the Commonwealth must establish that a defendant "knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the

legal authority to do so."  Commonwealth v. Murphy, 844 A.2d 1228, 1234 (Pa. 2004) (citation omitted); see 35 P.S. § 780-113(a)(30).

Appellant fails to identify which element or elements of a Delivery charge the Commonwealth failed to establish, instead challenging the credibility of the Commonwealth's witnesses.  See Appellant's Br. at 72.  This is not a proper challenge to the sufficiency of evidence supporting a conviction, as such arguments go to the weight, not the sufficiency, of the evidence.  See, e.g., Commonwealth v. W.H.M., Jr., 932 A.2d 155, 160 (Pa. Super. 2007) (rejecting sufficiency claim challenging credibility of rape victim's testimony); Commonwealth v. Wilson, 825 A.2d 710, 713-14 (Pa. Super. 2003) ("A sufficiency of the evidence review . . . does not include an assessment of the credibility of the testimony offered by the Commonwealth."); Commonwealth v. Gaskins, 692 A.2d 224, 227 (Pa. Super. 1997) (noting that challenge to credibility determinations of fact-finder "go to the weight, and not the sufficiency, of the evidence"); Commonwealth v. Boone, 429 A.2d 689, 691 (Pa. Super. 1981) (concluding that uncertainty in witness's identification of robbery suspect "did not render the evidence insufficient to convict").[10]

_____

[10] To preserve a sufficiency claim, an appellant must "specify the element or elements upon which the evidence was insufficient."  Commonwealth v. Smyser, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted).  Failure to conform to this specificity requirement may result in waiver even if the trial court addresses the sufficiency of the evidence.  Id.  Further, where an appellant "blur[s] the concepts of weight and sufficiency of the evidence" we

We also reject Appellant's implication that eyewitness testimony is inadequate to sustain a conviction. See Appellant's Br. at 71-72. "[I]t is well-settled that even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant." Commonwealth v. Crosley, 180 A.3d 761, 768 (Pa. Super. 2018) (citing Commonwealth v. Kearney, 601 A.2d 346, 349 n.6 (Pa. Super 1992)); Commonwealth v. Wilder, 393 A.2d 927, 928 (Pa. Super. 1978) ("[I]t is settled that a positive identification by one witness is sufficient for conviction."). In this case, the Commonwealth presented eyewitness testimony from two individuals, Logan Scott and Tyler Wolfe. Their testimony alone sufficed to establish that Appellant delivered heroin to Logan Scott on January 14, 2016. See N.T. Trial, 12/18/17, at 81-88 (Scott describing the transaction in detail), at 27-31 (Wolfe corroborating Scott's description).

Finally, Appellant's assertion that the Commonwealth relied solely on unreliable, eyewitness testimony is inaccurate. In stark contrast to Appellant's assertion, the Commonwealth presented the jury with substantial evidence corroborating this testimony. For example, Logan Scott testified specifically that he used a cell phone belonging to his mother to arrange the heroin transaction with Appellant. N.T. Trial, 12/18/17, at 82-83. To corroborate this testimony, the Commonwealth introduced call records establishing that

_____

may also reject an appellant's claim summarily as waived. Wilson, 825 A.2d at 714 (finding waiver where appellant had not first directed weight challenge to trial court).

Scott and Appellant communicated by cell phone on January 14, 2016. See N.T. Trial, 12/15/17, at 149-56. In addition, Scott testified that the heroin he purchased from Appellant on January 14, 2016, came packaged in bags entitled or branded "Essence." N.T. Trial, 12/18/17, at 87. The following day, upon scheduling a police-monitored, controlled buy with Appellant, Scott inquired and confirmed that Appellant had more of the same branded bags of heroin. See N.T. Trial, 12/15/17, at 74-75 (description of audio recording of an intercepted conversation between Appellant and Scott). Police investigators seized similarly branded bags on January 15, 2016, from Tanner Stark's room and following the controlled buy. See N.T. Trial, 12/14/17, at 98; N.T. Trial, 12/15/17, at 108-09.

The eyewitness testimony, along with its corroborating evidence, is not so weak or inconclusive that as a matter of law no probability of fact could be forthcoming. See Bostick, 958 A.2d at 560. Thus, the jury was free to believe all, part, or none of it. Id. Viewing this evidence in the light most favorable to the Commonwealth, we conclude the Commonwealth introduced sufficient evidence to establish that Appellant knowingly transferred heroin to Logan Scott on January 14, 2016, without legal authority to do so. See Murphy, 844 A.2d at 1234; 35 P.S. § 780-113(a)(30). Accordingly, Appellant's claim fails. See Peck, 202 A.3d at 743.

In his fifth issue, Appellant contends that he suffered "the appearance of prejudice" when the trial court permitted inflammatory and inaccurate statements from law enforcement officers at his sentencing hearing.

Appellant's Br. at 77-86.[11]   According to Appellant, the court's apparent reliance on these statements led it to impose an excessive sentence.   See id. at 74.   Therefore, Appellant submits, he is entitled to a new sentencing hearing.   Id. at 86-87.

Appellant challenges discretionary aspects of his sentence.   Such a claim is not reviewable as a matter of right.   Commonwealth v. Leatherby, 116 A.3d 73, 83 (Pa. Super. 2015).   Rather, an appellant must invoke this Court's jurisdiction by satisfying a four-part test: "(1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b)."   Id. (citation omitted).

Appellant timely appealed and preserved his claim in a Post-Sentence Motion.   Additionally, Appellant has complied with Pa.R.A.P. 2119(f).   See

_____

[11] Appellant also objects repeatedly to these statements as "unsworn."  See Appellant's Br. at 74, 76, 78, 83, 84, 85, 86.  However, Appellant lodged no such objection at the sentencing hearing.  See N.T. Sentencing, 2/7/18, at 2-27.  Further, although a defendant is entitled to due process, "the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial."  Commonwealth v. Eldred, 207 A.3d 404, 408 (Pa. Super. 2019) (citation omitted); Commonwealth v. Medley, 725 A.2d 1225, 1229 (Pa. Super. 1999).  For these reasons, we find Appellant's objections misplaced.

Appellant's Br. at 72-77. Therefore, we must determine whether Appellant has raised a substantial question for our review.

"In order to establish a substantial question, an appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." Commonwealth v. Corley, 31 A.3d 293, 297 (Pa. Super. 2011). We examine whether a particular issue raises a substantial question on a case-by-case basis. Id. "Bald allegations of excessiveness, unaccompanied by a plausible argument that the sentence imposed violated a provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme, are insufficient to raise a substantial question." Commonwealth v. Lee, 876 A.2d 408, 412 (Pa. Super. 2005).

Appellant suggests that it reasonably appears from the record that the trial court relied on impermissible factors in sentencing him and, therefore, imposed an excessive sentence. See Appellant's Br. at 74-76. In particular, Appellant challenges statements from law enforcement officers asserting that Appellant was responsible for the death of Tanner Stark, despite his acquittal of that charge, and further that Appellant had contributed to drug problems confronting the local community, without supporting facts or evidence. See Appellant's Br. at 74-75. According to Appellant, the apparent consideration given these statements is sufficient to establish a substantial question. Id.

This Court has found similar claims present a substantial question. See, e.g., Commonwealth v. Tobin, 89 A.3d 663, 666 (Pa. Super. 2014)

(substantial claim presented where sentence allegedly augmented by allegations ultimately nolle prossed); Commonwealth v. Miller, 965 A.2d 276, 277 (Pa. Super. 2009) (same); Commonwealth v. Stewart, 867 A.2d 589 (Pa. Super. 2005) (same); see also Commonwealth v. Macias, 968 A.2d 773, 776 (Pa. Super. 2009) (accepting the mere allegation that a court relied upon an impermissible factor as a substantial question). Thus, we consider the merits of Appellant's claim.

"Sentencing is a matter vested in the sound discretion of the sentencing judge," and we shall not disturb a sentence absent an abuse of that discretion. Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted). "An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Commonwealth v. Moury, 992 A.2d 162, 169-70 (Pa. Super. 2010) (quoting Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007).

The Sentencing Code requires that any sentence of confinement be "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b); see Commonwealth v. Williams, 69 A.3d 735, 741 (Pa. Super. 2013). The sentencing court must also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing. 42 Pa.C.S. § 9721(b). The

guidelines are nonbinding but provide "advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered[.]" Walls, 926 A.2d at 965-65.

In this case, Appellant concedes that the trial court imposed a sentence that falls within the standard range of the sentencing guidelines. See Appellant's Br. at 75, 85-86; see also N.T. Sentencing at 24-27 (defining and imposing a standard-range sentence). Further, the transcript of the Sentencing Hearing reveals that the court relied on a pre-sentence investigation report and that Appellant did not challenge its factual contents. See N.T. Sentencing at 24.[12] "[W]here the court imposes a standard-range sentence with the benefit of a pre-sentence investigation report, we will not consider the sentence excessive." Commonwealth v. Corley, 31 A.3d 293, 298 (Pa. Super. 2011) (citing Moury, 992 A.2d at 171). In those circumstances, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Luketic, 162 A.3d 1149, 1165 (Pa. Super. 2017) (quoting Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988)).

_____

[12] There was some confusion related to whether Appellant was entitled to credit for time served in this case or whether credit should be applied to a separate probation and/or parole detainer. See N.T. Sentencing at 12-16. Ultimately, the court determined that Appellant was entitled to 427 days credit for time served. Id. at 26.

- 23 -

Moreover, we may not vacate a sentence consistent with the sentencing guidelines unless it is clearly unreasonable, 42 Pa.C.S. § 9781(c), viewed in light of statutory factors set forth in 42 Pa.C.S. § 9781(d), which include:

1. The nature and circumstances of the offense and the history and characteristics of the defendant.

2. The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

3. The findings upon which the sentence was based.

4. The guidelines promulgated by the commission.

See Walls, 926 A.2d at 963; Macias, 968 A.2d at 776-77 (Pa. Super. 2009).

Appellant makes no specific assertion that the trial court abused its sentencing discretion. See generally Appellant's Br. He does not assert that his sentence is clearly unreasonable, nor does he present any argument that invokes the relevant statutory factors. Id. Rather, Appellant asserts that, in light of the tremendous discretion afforded a sentencing judge, the "appearance of prejudice" is sufficient to warrant new proceedings. Id. at 78 (citing Commonwealth v. Williams, 69 A.3d 735 (Pa. Super. 2013)).

In Williams, following revocation of the appellant's probation, the lower court imposed a significant sentence of approximately twenty-four to forty-eight years. Williams, 69 A.3d at 739. On appeal, we rejected the sentence as manifestly unreasonable "because the sentencing court's reasoning [was] infused with partiality, prejudice, bias or ill will." Id. at 742 (internal quotation marks and citations omitted). Viewing the entirety of the court's statements, which "[struck] a tone of advocacy rather than dispassionate reflection," we

concluded that the sentence imposed could not be divorced from the appearance of bias. Id. at 744.

However, while we recognized that the appearance of prejudice may be sufficient to warrant new proceedings, it is clear from our lengthy review of the court's statements in Williams that an appearance of prejudice must be substantial and supported by the record, otherwise it is tenuous and, ultimately, insufficient to warrant relief. See id. at 745-49 (documenting sentencing judge's repeated criticisms of another judge, who had previously supervised appellant, as "unduly lenient" and repeatedly describing appellant as a "pathological liar" and a "classic sociopath" without scientific evidentiary bases).

In Williams, the accumulation of derogatory remarks by the sentencing judge substantiated an appearance of bias. Our review of the Sentencing Hearing in this case reveals no similar remarks from the trial court. At the conclusion of the hearing, the court stated as follows:

> I considered the information in the presentence report. As noted, Mr. Carter does have an extensive criminal history involving serious previous convictions including drug offenses. The prior record score in this case is a five. I have determined that the appropriate sentencing guidelines and the standard range for the minimum sentences are as follows: On the delivery relating to January 14, standard range of 21 to 27 months.
>
> On the deliver relating to January 15, again 21 to 27 months.
>
> On the possession with intent to deliver relating to January 15, 21 to 27 months.

> There are two counts of criminal use of communication facility, one relating to January 14, and one to January 15, the standard range on each of those is 12 to 18 months.
>
> I find that Mr. Carter was engaged in a course of conduct involving the sale of heroin. I heard his words spoken as recorded during the drug deliver[y]. He was anxious to dispense this poison to anybody he could, including these customers from Clarion County.
>
> So, upon consideration of these factors and the evidence presented at the trial, the sentence order is as follows . . . [.]

N.T. Sentencing at 24-25 (thereafter imposing a sentence within the standard range of the sentencing guidelines). Thus, we conclude that Appellant has failed to substantiate his claim of apparent bias or prejudice by the trial court.

Moreover, we expressly reject Appellant's attempt to attribute statements made by witnesses called on behalf of the Commonwealth to the court. See Appellant's Br. at 77-86. "[P]rior to imposing sentence [a] sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." Commonwealth v. Melvin, 172 A.3d 14, 25 (Pa. Super. 2017) (quoting Commonwealth v. Rhodes, 990 A.2d 732, 746 (Pa. Super. 2009)). This authority is not unfettered. Id. Due process permits a court to consider this information "provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." Commonwealth v. Eldred, 207 A.3d 404, 408 (Pa. Super. 2019) (citation, quotation marks, and emphasis omitted).

At the Sentencing Hearing, the court permitted statements from two law enforcement officers. See N.T. Sentencing at 16-19 (statement of Chief Peck), 20-22 (statement of Trooper Craddock). Appellant vigorously disputed portions of those statements. See, e.g., id. at 17, 21. Most contentious was the following excerpt from Trooper Craddock's statement:

> What did Mr. Carter do with his fourth opportunity to change his life? Nothing. He went right back on parole to selling heroin. And dealing this heroin ultimately led to the death of a Clarion County community member, a resident of Clarion County.

N.T. Sentencing, 2/7/18, at 21. In response, Appellant stressed that the jury had acquitted Appellant of Drug Delivery Resulting in Death and asked the court "not to consider that portion of [Trooper Craddock's] statement." Id.

In its Opinion issued in support of its Order denying Appellant's Post-Sentence Motion, the court addressed this dispute, specifically found Trooper Craddock's statement erroneous, and stated unequivocally that the statement did not impact Appellant's sentence. Trial Ct. Op., filed 5/7/18, at 8. The court similarly addressed the other factual disputes that arose during sentencing. See id. at 7-8. Based on our review of the record, we conclude that the trial court afforded Appellant an adequate opportunity to challenge evidence proffered by the Commonwealth, clarified the findings that informed its rationale for sentencing, and, thus, conducted an appropriate Sentencing Hearing. Eldred, 207 A.3d at 408; Melvin, 172 A.3d at 25. Therefore, we see nothing in the record to support Appellant's assertion that, despite the court's representations to the contrary, it nonetheless relied upon

inflammatory or inaccurate statements by these two Commonwealth witnesses.

In conclusion, the trial court imposed a standard range sentence with the benefit of a pre-sentence investigation report. Appellant has not argued, let alone established, that his sentence is clearly unreasonable in light of the relevant statutory factors set forth in 42 Pa.C.S. § 9781(d). Further, Appellant has failed to substantiate his claim of apparent bias or prejudice. For all these reasons, we discern no abuse of the court's sentencing discretion. Zirkle, 107 A.3d at 132.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2019