J-S57027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BIVIANO PEREZ | |
| Appellant | No. 246 MDA 2019 |

Appeal from the Judgment of Sentence entered January 8, 2019
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0003177-2017

BEFORE:  BOWES, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 21, 2020**

Appellant, Biviano Perez, appeals from the judgment of sentence entered on January 8, 2019 in the Court of Common Pleas of York County following his conviction of possession with intent to deliver heroin.  Appellant argues the trial court abused its discretion by imposing a sentence above the aggravated range.  Following review, we affirm.

In its Rule 1925(a) opinion, the trial provided the following background:

On August 17th, 2018, [Appellant] was admitted into the York County Drug Treatment Court program.  On August 21st, 2018, while in the treatment court program, [Appellant] admitted to using four bags of heroin the morning before reporting to court, and was remanded to the York County Prison at that time. [Appellant] plead guilty on September 4th, 2018. [Appellant] was subsequently released [from] the York County Prison into an inpatient treatment facility.  After a period of about a month there, [Appellant] was remanded to the York County Prison, then subsequently asked to be removed from the treatment court

program on October 30th, 2018. On January 8th, 201[9], the court sentenced him to 7 to 14 years' incarceration.

Rule 1925(a) Opinion, 5/2/19, at 2 (some capitalization omitted). Appellant filed post-sentence motions, which the trial court denied. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents one issue for our consideration:

The trial court abused its discretion when it sentenced Appellant above the aggravated range when several factors considered by the court to sentence above the aggravated range were already incorporated into Appellant's offense gravity score and/or incorporated into the guideline ranges.

Appellant's Brief at 4.

Appellant presents a challenge to the discretionary aspects of sentence. As this Court recognized in *Commonwealth v. Matthews*, 196 A.3d 242 (Pa. Super. 2018),

[w]hen an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *See Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

this Court conducts a four-part analysis to determine: (1) whether Appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether Appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 251 (quoting *Moury*, 992 A.2d at 170) (alterations and citation omitted).

Here, Appellant satisfied the first three prongs of the analysis. He filed a timely notice of appeal and preserved his issue in a post-sentence motion. His brief contains a separate Rule 2119(f) statement. *See* Appellant's Brief at 10. Therefore, we must determine whether his issue presents a substantial question permitting our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). Further:

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Id.* (citations omitted).

"An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014), *appeal denied,* 105 A.3d 736 (Pa. 2014) (internal citations omitted). Appellant contends:

> A substantial question is raised when the sentencing court sentenced a defendant outside the sentencing guidelines and the sentence is unreasonable. *See* 42 Pa.C.S. [§] 9781(c)(3). A substantial question is also raised when a sentencing court considers factors incorporated into the prior record score when sentencing to the aggravated, mitigated, or beyond the

- 3 -

guidelines.  *See Commonwealth v. Darden*, 531 A.2d 1144, 1148-49 (Pa. Super. 1987).

Appellant's Brief at 10.  As in **Darden**, we find Appellant here has raised a substantial question.  **See Darden**, 531 A2d at 1147.  Therefore, we shall consider the merits of his claim.

The standard of review for a challenge to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Matthews**, 196 A.3d at 251 (quoting **Commonwealth v. Gonzalez**, 109 A.3d 711, 731 (Pa. Super. 2015)).  "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines." **Commonwealth v. Fullin**, 892 A.2d 843, 847–48 (Pa. Super. 2006) (internal citations omitted).

Here, the trial court made the following statement before imposing sentence:

> [Appellant] appears today to complete sentencing following the entry of an open plea that brought him into the Heroin Opioid

- 4 -

Wellness Court. I've reviewed the PSI and considered its contents, considered the statements of each counsel, all the evidence surrounding this case, brief comments by [Appellant], considered the information related to me at sidebar.

Within the PSI, the court notes that [Appellant] had a substantial period of time where he was apparently not in trouble with the law. He had a conviction last of May 30th, 1993 [*sic*], for the sale of controlled narcotics, and he got 3 to 6 years in prison for that. So I don't know how long he did in prison, but there would have been – even if he did the full 6 years, there would have been approximately a 10-year period where he was not in trouble with the law.

He did have criminal sale of controlled substances in 1987 and 1986. He's got a felony assault in 1987 as well. Criminal possession of a weapon back in 1984. He does have an escape, Felony III escape, in 2009, a resisting arrest, a separate case, 5247 of 2009, and then he's got the instant charge in 2017.

One of the other factors the court considers, [Appellant] entered the Drug Court Treatment Program on August 17th, 2018. [Appellant] entered the Teen Challenge Program apparently that same day and lasted three days before leaving the program against medical advice. He reported the next day on August 21, 2018, and admitted to using four bags of heroin that morning before reporting to court, that he had consumed marijuana the week before and methadone that was not prescribed to him on August 19th. He was remanded to the York County Prison at that time.

He was ultimately released to White Deer Run in York on September 13th, 2018. On October 1st, 2018, White Deer Run reported that [Appellant] was not participating in groups, and on [October] the 2nd, 2018, he was escorted off the property by law enforcement officers after exhibiting aggressive behaviors toward another individual while in treatment.

Essentially, [Appellant] never demonstrated any interest in his recovery and rehabilitation. He demonstrated an apathetic and negative attitude during the limited time that he was in the court. [Appellant] communicated that he clearly is just going to do it his way. He doesn't care what probation says, what the judge says,

what treatment professionals say. He's just going to do it his own way.

So it's not unusual that we run into that sort of attitude with somebody in the Treatment Court, and when that happens, we refer them to the Freedom Program for some improvement in their thinking process. So we wanted to give [Appellant] one last chance recognizing that he did have a significant prior record score of 5. So on October 9th, 2018, [Appellant] was remanded because he wasn't getting anything out of the Treatment Court Program due to his own recalcitrance, and he was ordered to complete the Freedom Program as a condition of remaining in the Heroin Opioid Wellness Court.

On October 30th, 2018, [Appellant] indicated that he was not going to complete the Freedom Program. None of this information about health issues was related to the probation officer or the court at that time. We were just told that [Appellant] told his probation officer that he could just do the time.

So based upon what I'm seeing, [Appellant], while he has had gaps of time where he has managed to stay out of trouble with the law, [Appellant] when he gets into trouble with the law and is given the opportunity for rehabilitation and reform, he has no interest in it. He's a stubborn individual. He's going to do things his way. The court finds that he has no rehabilitative potential at this point. The Heroin Opioid Wellness Court is focused upon treatment, upon individuals improving their life, upon counseling, upon developing new skills to avoid criminal thinking, and to avoid addictive behavior. Although given multiple chances even when he was making bad decisions, [Appellant] has demonstrated that he has a criminal mindset.

We get people in here who are criminals because that have addiction issues so they make bad choices because they're addicts. Then we get people in this court who are criminals who have a criminal mindset who also happen to be addicts. [Appellant] falls into that latter category. He's a criminal who happens to have an addiction issue. He refused the benefits of the Treatment Court Program, and thereby refused rehabilitation. He refused the structure, the self-discipline, the self-reflection, the cognitive adjustment that were a path to him staying out of jail and to not being a threat to society even while he was in

treatment. He could not control himself and had to be escorted by police out of a treatment facility.

It is clear to this court that [Appellant] wants to keep living a life in the drug-abusing community. He wants to keep dealing drugs. He wants to take the easy path. He is not interested in self-improvement, and he intends to keep being a drain on society.

The problem that he has now with this court is that he's dealing deadly drugs, and due to his lack of remorse and lack of rehabilitation, this court is convinced he will continue to deal deadly drugs the day that he gets out of prison. That makes him a threat to society. He has the three prior convictions for drug dealing. All of these factors taken into consideration warrant a sentence in the aggravated range to protect society and due to the lack of rehabilitative potential and remorse.

[Appellant's] prior record score is a 5. The charges before the court for sentencing have the offence gravity score of 6. . . . The court finds that [Appellant] has no rehabilitative potential at this moment, and the sentencing factors the court considers are punishment, protecting society, specific deterrence, and general deterrence. All of those factors warrant a lengthy prison sentence to protect society and to show [Appellant] that he is not going to do it his way. He is going to follow the law.

After a review of all relevant matters, the court sentences [Appellant] to a period of 7 to 14 years in a state correctional institution and a $5,000 fine. [Appellant] is not RRRI eligible. Court costs are assessed. He has 128 days credit.

Notes of Testimony, Sentencing, 1/8/19, at 7-12 (unnumbered).

In its Rule 1925(a) opinion, the trial court dismissed Appellant's assertion that the court abused its discretion by imposing a sentence above the aggravated range based on "several factors" already taken into account in the offense gravity score. The court found the argument "nonsensical" because offenses have a set gravity offense score that is the same regardless of who the defendant is. Rule 1925(a) Opinion, 5/2/19, at 3-4 (citing 204

Pa.Code §§ 303.3 and 303.15). The court stated that the sentence "was based on subjective factors beyond those contained in a numerical offense score." *Id.* at 4. Further, Appellant did not clarify which "several factors" he believed were improperly considered by the court. *Id.*

The court also confirmed that it did consider the sentencing guidelines when it imposed its sentence. "However, [Appellant] had been convicted of crimes involving the criminal sale of narcotics three times previously, yet still continued to engage in the same criminal behavior of selling illegal narcotics. Specifically, the instant conviction is the fourth PWID-related charge of which [Appellant] has been found guilty." *Id.* at 4. This fact reinforced the trial court's determination that Appellant has "not reformed his behavior after his prior convictions, nor possesses any level of remorse." *Id.* The court explained, "Where a defendant repeats the same crime, the trial judge may consider that as a factor, among others, in evaluating remorse and rehabilitative potential. Repeat offenses of the same crime are not issues limited to setting the numeric sentencing guidelines, as [Appellant] suggests." *Id.*

The trial court's statements reflect Appellant's prior convictions were not double-counted with his prior record score. As the court noted,

> The sentencing guidelines do not capture the fact that [Appellant] continued to commit the same offense again and again, a fact specifically probative of lack of remorse and rehabilitative potential in regard to being a drug dealer. These facts, coupled with [Appellant's] willful rejection of the opportunity offered to him by the intensive drug treatment court program, demonstrates

that [Appellant] is an ongoing threat to community safety by dealing deadly drugs, and shunning all rehabilitative efforts to stop such conduct.

In light of [Appellant's] character, lack of remorse, and lack of rehabilitative potential, [Appellant's] sentence was not manifestly unreasonable. [Appellant] refused all efforts at rehabilitation presented to him. [Appellant] was given numerous opportunities for self-reflection and improvement, and instead took the easy path to keep causing harm to society. [Appellant] has a criminal mindset, and wishes to continue his ways of engaging in the illegal sale of deadly narcotics. For these reasons he needs to be separated from society for a lengthy period of time, in excess of standard ranges where a defendant does have rehabilitative potential. His sentence is appropriate in light of the factors cite[d] by the court[.]

Rule 1925(a) Opinion, 5/2/19, at 4-5.

Based on our review of the factors set forth in Section 9781(d), we find the trial court properly considered the nature of the offense, Appellant's history and characteristics, and the sentencing guidelines. Further, the court had the opportunity to observe Appellant at trial and at sentencing and had the benefit of the pre-sentence investigation report. The reasons stated for the sentence reflect the court's consideration of the protection of the public, the gravity of the offense, and Appellant's rehabilitative needs and prospects. Further, the court's reference to Appellant's prior convictions, including three drug convictions, was relevant to the court's consideration of Appellant's potential for rehabilitation or, more accurately, his lack of potential for rehabilitation. *See Commonwealth v. Peck*, 202 A.3d 739, 749 (Pa. Super. 2019) (citing *Commonwealth v. Messmer*, 863 A.2d 567, 573 (Pa. Super. 2004) (noting that although the prior record score accounted for the

defendant's prior driving-under-the-influence convictions, the score did not reflect the defendant "complete absence of regard for the law" and the need to protect the public), *appeal granted in part on other grounds*, **Commonwealth v. Peck**, 218 A.3d 374 (Pa. 2019). Therefore, we find no merit to Appellant's assertion that the court double-counted factors already considered in the guidelines.

Based on our review of the record and mindful of our standard of review, we conclude the trial court did not abuse its discretion by imposing a sentence above the aggravated range. Therefore, we shall not disturb the sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2020

- 10 -