**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS SIDERIO | |
| Appellant | No. 1571 EDA 2019 |

Appeal from the Judgment of Sentence entered January 25, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008742-2017

BEFORE: SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.: **FILED OCTOBER 19, 2020**

Appellant, Thomas Siderio, appeals from the judgment of sentence the Court of Common Pleas of Philadelphia County imposed on January 25, 2019. Counsel has filed a brief and petition to withdraw pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). We grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The trial court summarized the relevant factual background as follows:

Shortly after midnight, in the early morning of April 1, 2017, [Appellant] arrived at the Uncut Lounge, a club located at 3017 N 22nd Street in Philadelphia, in order to meet his best friend Daquan Foster, for a night out. [Appellant] arrived with his cousin, Joseph Hastings, his girlfriend, Yarissa Rivera, his friend, Brian Johnson, and Johnson's girlfriend. While [Appellant] was drinking in the club, Johnson approached him and told him that Foster was in a fight in the back of the club. [Appellant] attempted to go to the back of the club to see what was going on, but people were pushing and shoving and [Appellant] could not find Foster. As a

result, [Appellant] decided to leave the club, retrieve a gun that he had left in the trunk of his friend's car, and then return to the club to help Foster. When he got to the car he also grabbed a hoody from the car and pulled the hood up over his head in an effort to conceal his identity. [Appellant] did not have a license to carry the firearm.

By the time [Appellant] got back to the club with his gun, Foster was out of the bar and in the street. When Foster saw [Appellant]'s gun, Foster told [Appellant] that the fight was over, and both started running from the scene. At that time, Steven Busch, a security guard from the club, saw [Appellant] with the gun, and yelled out, "gun" to his partner, Mikal Crump. Both security guards then began firing at [Appellant]. One of the bullets they fired at [Appellant] struck and killed Hastings, who was out on the street following [Appellant]. At the same time, [Appellant], hearing gunshots, fired his gun, striking a parked car that contained Joseph Hickson, Jalil Caesar, and Clinton Cotton. As a result, the car window was shot out and Caesar was shot in the leg. During the exchange of gunfire, [Appellant] was shot in the back.

Trial Court Opinion, 9/18/19, at 2-3 (citations to the record omitted). The trial court summarized the procedural history as follows.

On November 30, 2018, following a trial,

[Appellant] was convicted of one count each of carrying a firearm without a license (18 Pa.C.S. § 6106) and carrying a firearm on a public street in Philadelphia (18 Pa.C.S. § 6108). [Appellant] was acquitted of three counts each of attempted murder (18 Pa.C.S. §§ 901(a), 2502) and aggravated assault (18 Pa.C.S. § 2702(a)) regarding alleged victims Joseph Hickson, Jalil Caesar, and Clinton Cotton. He was also acquitted of one count of possessing an instrument of crime (18 Pa.C.S. § 907). In addition, [the trial court] granted [Appellant]'s motion for judgment of acquittal for possession of a firearm by a prohibited person (Pa.C.S. § 6105). The case was joined for trial with the charges at Docket Number CP-51-CR-0008741-2017, where [Appellant] was charged with the murder of alleged victim Joseph Hastings (Pa.C.S. § 2502). [Appellant] was acquitted of all charges regarding Mr. Hastings.

On January 25, 2019, [the trial court] imposed consecutive sentences of 3½ to 7 years['] incarceration for the carrying a firearm without a license and 2½ to 5 years['] incarceration for the carrying a firearm on a public street in Philadelphia, for an aggregate sentence of 6 to 12 years['] incarceration. [Appellant] filed post-sentence motions, which the [trial court] denied on May 20, 2019. [This appeal followed.]

Trial Court Opinion, 9/18/19, at 1-2 (citation to the record omitted).[1]

On appeal, counsel filed an *Anders* brief challenging the discretionary aspects of Appellant's sentence. In response, Appellant filed a *pro se* brief arguing that his sentence is excessive and taking issue with the trial court's reason for imposing an upward departure from the sentencing guidelines. These circumstances are similar to *Commonwealth v. Bennett*, 124 A.3d 327 (Pa. Super. 2015), where counsel filed an *Anders* brief and the appellant filed a *pro se* response to the *Anders* brief. *Bennett* outlined the proper procedure in such cases. First, we determine whether counsel fulfilled the dictates of *Anders/Santiago*, and if so, we address the issues raised in the *Anders* brief. We also conduct an independent examination of the record as to those issues. If we find the issues meritless, we next examine Appellant's

_____

[1] The parties agreed that Appellant had a prior record score of 4. *See* Trial Court Opinion, 9/18/19, at 5, n.1. Regarding the carrying a firearm without a license conviction, the offense gravity score was 9, and the standard guidelines range was 36 to 48 months, plus or minus 12 months. *Id.* The sentence imposed here, 3½ to 7 years' incarceration, is therefore in the standard range of the sentencing guidelines. Regarding the sentence for carrying a firearm on a public street in Philadelphia, the gravity score was 5, and the standard guidelines range was 9 to 16 months, plus or minus 3 months. *Id.* The sentence imposed here, 2½ to 5 years' incarceration, is therefore an upward departure from the sentencing guidelines.

*pro se* allegations. As to these, we do not conduct an independent review of the record, because Appellant's *pro se* response/brief is treated as an advocate's brief. ***Id.*** at 333.

In accordance with ***Bennett***, we begin by considering the adequacy of counsel's compliance with ***Anders*** and ***Santiago***. Our Supreme Court requires counsel to do the following.

> Prior to withdrawing as counsel on a direct appeal under ***Anders****, counsel must file a brief that meets the requirements established by our Supreme Court in ***Santiago****. The brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief.

***Commonwealth v. Orellana***, 86 A.3d 877, 879–80 (Pa. Super. 2014). Upon review of the record, we conclude counsel has satisfied the requirements set forth in ***Anders*** and ***Santiago***.

Next, in accordance with **Bennett**, we conduct an independent review of the record concerning the issue raised in the **Anders** brief. The **Anders** brief raises the following issue:

> Whether the sentencing court erred, and whether there are substantial questions presented about the sentence imposed upon the Appellant, where the sentence was excessive, outside the guidelines an contrary to the norms underlying the Sentencing Code, where the [trial c]ourt utilized sentencing enhancement considerations that were already factored into the offense gravity score and the prior record score, where the [trial c]ourt failed to give due consideration to the Appellant's character, history and condition and where the [trial c]ourt failed to give due weight and proper consideration that the Appellant was shot twice and acquitted of all assault charges[.]

**Anders** Brief at 6.

The issue raised in the **Anders** brief involves the discretionary aspects of Appellant's sentence. **See**, **e.g.**, **Commonwealth v. Ahmad**, 961 A.2d 884, 886 (Pa. Super. 2008). Because challenges to the discretionary aspects do not entitle an appellant to appellate review as of right, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test to determine: 1) whether the appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether the appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. **Commonwealth v. Moury**, 992 A.2d 162, 169-70 (Pa. Super. 2010).

We apply an abuse of discretion standard to challenges to the discretionary aspects of a sentence. *Id.* An abuse of discretion is

> more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Id.* at 169-70 (citation omitted).

> Additionally,
>
> [w]hen imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but i[s] not bound by the Sentencing Guidelines. . . . A court may depart from the guidelines if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. When a court chooses to depart from the guidelines however, it must demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines. Further, the court must provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines.
>
> When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. An appellate court must vacate and remand a case where it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3).

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citations and quotation marks omitted).

As an initial matter, we conclude that the only issue preserved for our review is that the trial court erred in imposing a sentence that exceeded the guidelines for his conviction under Section 6108. All other issues included in the *Anders* brief were not preserved in Appellant's post-sentence motion. *See Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa. Super. 2013) ("Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived") (citation omitted).

In the trial court's view, an upward departure from the sentencing guidelines was warranted:

> [Appellant]'s conduct giving rise to his unlawful possession of a firearm on the night of the incident was not typical behavior contemplated by the [Sentencing] Guidelines for possession of a firearm. Knowing that he was on probation, [Appellant] stashed an unlicensed firearm in the trunk of his friend's car for ready access during a night out at a club. When [Appellant] believed that his friend might have been in a bar fight, [Appellant] readily retrieved the weapon and returned to the club, ready to go inside [] and use it in the fight. The [trial court] fully recognizes that [Appellant] never entered the bar with the weapon and was acquitted of the murder, attempted murder and aggravated assault charges. However, it is not contested that his unlawful possession of a gun that evening started a chain of events that led to [Appellant]'s cousin being shot and killed by a security guard, and led to an innocent bystander in a parked car being shot. In addition, as the [the trial court] noted, consecutive

sentences were appropriate in order to achieve an aggregate sentence that would be fair under the circumstances.

Trial Court Opinion, 9/18/19, at 6-7 (citation to record omitted).

Based on our independent review of the record, we conclude that the trial court did not abuse its discretion, and agree with counsel that this issue is frivolous.

In his response to counsel's **Anders** Brief, Appellant filed a *pro se* brief that took issue with the trial court's comment that "it is not contested that [Appellant's] unlawful possession of a gun that evening started a chain of events that led to [Appellant]'s cousin being shot and killed by a security guard, and led to an innocent bystander in a parked car being shot." Trial Court Opinion, 9/18/19, at 6-7. Appellant argues that "the court['s] comments extrapolate both logic and the law beyond a fair reading of the record . . . . Appellant, himself, did contest the assertion that his unlawful possession of firearm started a chain of events as determined by the court." Appellant's *Pro Se* Response to Counsel's **Anders** Brief, 2/19/20, at 2. According to Appellant, his possession of the weapon did not justify the two security persons' actions. **See id.** at 3. "They saw a gun, without more, and unleashed a hail of bullets. Appellant's possession of a firearm could have been entirely legal and the same chain of events would have occurred." **Id.**

As discussed above, in reviewing Appellant's *pro se* response to counsel's **Anders** brief, we do not conduct an independent review of the

record but instead treat Appellant's response as an advocate's brief. ***Bennett***, 124 A.3d at 333.

Appellant does not challenge the facts but solely the weight these facts should be accorded. According to Appellant, the trial court improperly weighed the sequence of the events against him when it should have been weighed more favorably to Appellant, given that the security guards started firing their weapons, and that he was hit twice by their bullets. No relief is due.

It is well-settled that we are not in the position of reweighing the facts or substituting our judgment for that of the trial court. ***See Commonwealth v. Peck***, 202 A.3d 739, 748 (Pa. Super. 2019) ("this Court should not reweigh the proper sentencing factors considered by the trial court and impose our own judgment in the place of the trial court") (citation omitted); ***Commonwealth v. Bricker***, 41 A.3d 872, 876 (Pa. Super. 2012) (the weighing process is exclusively for the sentencing court, and we, as an appellate court, may not reweigh sentencing factors and substitute our own judgment of the proper sentence).

Upon review, we conclude that the trial court did not abuse its discretion in fashioning Appellant's sentence. Accordingly, we grant counsel's motion to withdraw and affirm the judgment of sentence.

Counsel's motion to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/19/20