J-A17001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO LINDSAY | : | |
| | : | |
| Appellant | : | No. 1458 EDA 2019 |

Appeal from the Order Entered April 22, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0002255-2018

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 13, 2020**

Antonio Lindsay appeals from the judgment of sentence of thirty-one to sixty-two years of imprisonment imposed after he was convicted of third-degree murder and related offenses.  We affirm.

At approximately 9:00 a.m. on January 30, 2018, the caretaker of the Elkins Estate in Cheltenham Township of Montgomery County discovered the body of Joseph Kohler ("the victim") and summoned the police.  **See** N.T. Jury Trial Vol. II, 12/11/18, at 341.  The victim had been shot twice, once in the right side of the neck and once in the left arm and abdomen.  **See** N.T. Jury Trial Vol. III, 12/12/18, at 420.  The neck wound caused the victim's death.  **Id**. at 430.[1]  A subsequent investigation revealed the following information.

---

[1]  Cocaine, marijuana, Xanax, and Paxil were found in the victim's system, but played no role in his death.  **See** N.T. Jury Trial Vol. III, 12/12/18, at 421.

Two weeks earlier, the victim was discharged from an inpatient drug rehabilitation program where he had been receiving treatment for addictions to heroin, cocaine, and prescription medications. *Id*. at 457-58. Upon release, the victim was living with his parents in Johnstown, approximately four hours from Philadelphia. *Id*.

On January 27, 2018, the victim drove his mother's vehicle, a white Ford Escape, to Philadelphia. Appellant, Basil Kinard, and Antonio Finney rode with Appellant to Philadelphia. *Id*. at 485, 597, 604-05. At approximately 7:00 p.m., Philadelphia Police Officer James Vinson and his partner stopped the vehicle in Germantown after they noticed its right brake light was burned out. *Id*. at 479. Since the vehicle contained four males, the officers requested back-up. *Id*. at 480. Upon approaching the vehicle, Officer Kinard smelled the odor of fresh marijuana, observed Appellant leaning forward and reaching under his seat, and saw the victim reaching towards the center console. *Id*. at 481-82. Accordingly, officers removed all of the occupants from the vehicle and frisked them for weapons. *Id*. at 485. During the frisk, officers recovered a large bag of marijuana from Appellant's right jacket pocket. *Id*. at 486. Police also retrieved 445 packets of heroin, valued at approximately $4,000, from the rear pocket of the seat immediately in front of Appellant. *Id*. at 488. Nothing else was recovered from the vehicle or the other occupants. *Id*. at 490. As a result of these discoveries, Appellant was arrested and charged with possession of marijuana, possession of heroin, and possession with the

- 2 -

intent to distribute heroin. *Id*. at 489. The remaining occupants of the vehicle were not criminally charged.

Later that evening, the victim was driving around Germantown when he met Kareem Bilal, a local drug dealer who sold marijuana to the victim and knew Appellant. *See* N.T. Jury Trial Vol. II, 12/11/18, at 53, 73. The victim told Bilal that he was lost because he was not from Philadelphia and that his friend had just been arrested. *Id*. at 56. After a brief discussion, Bilal asked his cousin, Timothy Bates, if the victim could stay with them. *Id*. at 57. Bates agreed and the three men plus a friend, Kevin Hawkins, purchased more drugs before traveling to Bates's house in North Philadelphia. *Id*. at 58-59.

On January 28, 2018, the victim called his mother, informed her of the traffic stop, and requested money so that he could return to Johnstown. *See* N.T. Jury Trial Vol. III, 12/12/18, at 460-61. After the call, the victim's mother wired $120 through Walmart. *Id*. at 466. Later that afternoon, Walmart security cameras picked up the victim, Bilal, Bates, and Hawkins picking up the money that the victim's mother had wired. *See* N.T. Jury Trial Vol. II, 12/11/18, at 121, 203. However, instead of using the money to return home, the victim took the money to purchase more drugs.

Late on January 29, 2018, Appellant posted bail and called the victim to come pick him up so that they could return to Johnstown. *Id*. at 73-75. In the early morning hours of January 30, 2018, Bilal and Bates drove Appellant's vehicle to Germantown to pick up Appellant, who was accompanied by Kinard.

*Id*. at 78-79.  The four men returned to Bates's house where the victim and Hawkins were waiting.  *Id*. at 81.  Bates exited the vehicle and Appellant moved to the driver seat.  *Id*. at 84-85.  The victim and Hawkins joined Bilal in the back seat of the vehicle.  *Id*.  Appellant asked if the victim wanted to buy cocaine before returning to Johnstown and the victim agreed.  *Id*. at 85. Accordingly, Appellant, Kinard, Hawkins, Bilal, and the victim drove away from Bates's residence in search of drugs.  *Id*. at 87.

Appellant stopped the vehicle at an unknown location and briefly left the vehicle to retrieve the aforementioned cocaine.  *Id*.  However, he quickly returned without the contraband and set out to a second unknown location where he again claimed they would be able to purchase cocaine.  *Id*.  Once parked at the second location, Appellant told the victim to come with him to purchase the drugs.  *Id*. at 88-89.  Sometime after 2:00 a.m., both men exited the vehicle and disappeared over a hill.  *Id*. at 89.

A few moments later, Bilal and Hawkins heard multiple gunshots.  *Id*. at 89-90.  They quickly ducked down in their seats, unsure if the gunshots were being fired in their direction.  *Id*.  When they eventually looked up, Kinard was smirking at them.  *Id*.  Appellant then returned to the vehicle alone.  *Id*. at 92.  As he reentered the driver's seat, he advised Bilal and Hawkins: "y'all better not say shit."  *Id*. at 92, 96.  Appellant asked Bilal to take the victim's vehicle.  *Id*. at 93.  After Bilal refused, and after making a brief stop at an unknown location, Appellant dropped Bilal and Hawkins off

near Bates's house. *Id*. at 94-96. Appellant, Kinard, and the victim's phone then returned to Germantown, where a surveillance camera captured two individuals parking and locking the victim's vehicle in a lot located approximately three-tenths of one mile away from Appellant's home at 2:49 a.m. *See* N.T. Jury Trial Vol. III, 12/12/18, at 536-543, 578, 593.

The next day, the vehicle was recovered by police, who observed that the driver's seat was pulled in very close to the steering wheel of the vehicle, consistent with Appellant's shorter stature. *Id*. at 536, 559, 578. The same day, Appellant called Bilal to ensure that he had not spoken to anyone about what happened. N.T. Jury Trial Vol. II, 12/11/18, at 98. In the evening, Appellant texted his friend James Bradley and told him to "give ar da jawn." N.T. Jury Trial Vol. III, 12/12/18, at 639-41.

Over the course of the investigation, Bilal, Hawkins, and Bates were each interviewed multiple times by police. Although not initially forthcoming, all three eventually gave statements largely consistent with the above recitation of facts. Their statements were later corroborated with call and location records from their phones and the phone of the victim.[2]

---

[2] The police were only able to corroborate Appellant's movements with the statements of Hawkins, Bilal, and Bates up until 1:00 a.m. the night of the homicide. Appellant's phone was either turned off or in "airplane mode" from 1:00 a.m. the night of the homicide until 10:30 a.m. the next day. *See* N.T. Jury Trial Vol. III, 12/12/18, at 610-11.

On February 8, 2018, an arrest warrant was issued for Appellant. *Id*. at 634. On March 1, 2018, U.S. Marshalls arrested Appellant on the roof of Bradley's residence in Philadelphia. *Id*. Once incarcerated, Appellant called Bradley and instructed him to "tuck that motherfucking phone just in case they come back looking for it," because "that shit got pictures and everything in that jawn." *Id*. at 634-37. Referring to his arrest, Appellant told Bradley that though he had intended to continue eluding capture for much longer, he ultimately "felt that shit coming." *Id*.

Appellant proceeded to a four-day non-jury trial, at which Bilal, Hawkins, and Bates testified. On December 13, 2018, Appellant was convicted of third degree murder, persons not to possess firearms ("VUFA"), and possession of an instrument of crime ("PIC"). On March 22, 2019, the trial court sentenced Appellant to the statutory maximum at each charge, which amounted to terms of imprisonment of twenty to forty years for third degree murder, one to two years for PIC, and ten to twenty years for VUFA. All sentences were run consecutively, amounting to an aggregate term of thirty-one to sixty-two years of imprisonment.

Appellant filed a timely post-sentence motion challenging his sentence, which the trial court denied. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925(b).

Appellant presents the following issues for our review:

1.   The evidence was insufficient as a matter of law to prove beyond a reasonable doubt that [Appellant] caused the

death of the [victim] in that there was insufficient evidence to prove that [Appellant] shot and killed him.

2. The sentence imposed on the charge of VUFA-6105 was excessive and far in excess of the aggravated range of the sentencing guidelines and insufficient reasons for this departure were placed on the record with regards to this specific offense.

Appellant's brief at 4.

Appellant's first issue challenges the sufficiency of the evidence to support his convictions. *Id*. at 5. Our standard of review when considering a challenge to the sufficiency of the evidence is:

[w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa.Super. 2017) (citations and quotation marks omitted).

Appellant's arguments are not based upon the statutory elements of the crimes for which he was convicted, but rather the sufficiency of the evidence

- 7 -

to establish that he was the perpetrator. ***See***, ***e.g.***, ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa.Super. 2018) ("In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes."). Specifically, Appellant argues that the evidence was insufficient, because the Commonwealth did not present any eyewitnesses who observed Appellant fire the fatal shots and no physical evidence linked Appellant to the homicide. ***See*** Appellant's brief at 13-14. The trial court disagreed and explained its reasoning as follows:

> The credible testimony of Kareem Bilal and Kevin Hawkins was sufficient to establish that [Appellant] drove [the victim] to a relatively remote location and shot him twice, thereby causing his death. These two witnesses each testified that they saw [Appellant] leave the car with [the victim] and heard at least two gunshots before [Appellant] returned alone. [The victim] was discovered the next day with fatal gunshot injuries to his neck and his torso at the site where Bilal and Hawkins last observed him with [Appellant].
>
> Although there were no direct witnesses to the murder, it is settled law that a conviction may rest on circumstantial evidence alone. Here, the witness testimony of Bilal and Hawkins is corroborated by the forensic evidence. Dr. Wardak testified that the cause of death was gunshot wounds, one to the neck and one to the torso. This is consistent with the testimony of Bilal and Hawkins. The evidence of corresponding cell site location information placed the group at the site of the murder for approximately fifteen minutes consistent with the testimony of Bilal and Hawkins. A video recording showed the victim's car being left at a location near [Appellant's] residence shortly after the murder. The video showed that the car was parked in exactly the same location in which it was recovered, suggesting that no one had driven it since. This, combined with the position of the driver's seat as consistent with someone of [Appellant's small]

stature, suggested that [Appellant] was driving the victim's vehicle, just as Bilal and Hawkins testified.

Additionally, while motive is not an element of any of [Appellant's] crimes, the evidence did establish that [Appellant] had a motive in this case. Motive evidence is relevant to prove both the identity and mental state of the perpetrator. [Appellant] perceived that [the victim] was responsible for the seizure by police of 445 packets of heroin and for [Appellant's] arrest for possession of heroin with intent to distribute. The existence of a motive makes it more likely that [Appellant] committed the crime than if he had none, lending additional support to [Appellant's] conviction.

In combination, all of the evidence proved beyond a reasonable doubt that [Appellant] caused the death of [the victim] by shooting him in the neck and torso and then leaving him to die.

Trial Court Opinion, 8/12/19, at 12-14 (citations omitted). Our review of the certified record supports the trial court's findings.

It is well-established that "a solitary witness's testimony may establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference." *Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa.Super. 2018). Here, Bilal and Hawkins positively identified Appellant as the last person seen with the victim before they heard gunshots and Appellant returned to the vehicle alone. *See* N.T. Jury Trial Vol. II, 12/11/18, at 88-89, 92, 228-35. Accordingly, viewing the evidence in the light most favorable to the Commonwealth, these circumstantial identifications were sufficient to establish Appellant's identity and no relief is due.

In his next claim, Appellant challenges the discretionary aspects of his sentence. He attacks his sentence on three grounds: (1) that the trial court

failed to determine a prior record score as required, (2) that the trial court double-counted factors already ingrained in the sentencing code, and (3) that the court failed to give adequate reasons for the sentence it imposed. The following principles apply to our consideration of whether review of the merits of these claims is warranted. "An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction." **Commonwealth v. Samuel**, 102 A.3d 1001, 1006-07 (Pa.Super. 2014). In determining whether an appellant has invoked our jurisdiction, we consider four factors:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id*.

Appellant filed both a timely post-sentence motion for reconsideration of his sentence and a notice of appeal. In his motion, Appellant challenged the court's imposition of an excessive sentence for the VUFA charge, without placing sufficient reasons on the record for its upward departure from the sentencing guidelines. However, Appellant did not challenge the trial court's alleged failure to calculate a prior record score. He also did not raise this issue in his concise statement of errors complained of on appeal. Since Appellant's first issue was not raised before the trial court, we cannot consider it here.

*Id*. at 1006. However, Appellant did properly preserve his remaining and intertwined claims. Therefore, we now proceed to determine whether Appellant has raised a substantial question as to those issues.

Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). In his statement, Appellant claims that a substantial question is presented by the fact that the trial court imposed a statutory maximum sentence at the VUFA charge, without an appropriate discussion of all of the sentencing factors. *See* Appellant's brief at 8-11. Instead, Appellant contends, the court improperly relied on factors already ingrained in the sentencing code. *Id*. We find that this claim raises a substantial question, as it alleges that the trial court "double counted" the sentencing factors when imposing a sentence that exceeded the sentencing guidelines. *Commonwealth v. Peck*, 202 A.3d 739, 745 (Pa.Super. 2019). Accordingly, we consider the merits of Appellant's challenge to his sentence.

The following principles apply to our substantive review of Appellant's claim. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa.Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court."

*Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).  Instead, we review the trial court's determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather[,] the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

A trial court's sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).  "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant.  In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation."  *Antidormi*, *supra* at 761 (citations and quotation marks omitted).  Finally, when the trial court has been informed by a presentence investigation ("PSI"), it is presumed that the trial court is aware of and has been informed by all appropriate sentencing factors and considerations.  *Commonwealth v. Bullock*, 170 A.3d 1109, 1126 (Pa.Super. 2017).

Pursuant to 42 Pa.C.S. § 9781(c), we can vacate and remand only if we find that: (1) the court intended to sentence within the guidelines, but "applied the guidelines erroneously;" (2) a sentence was imposed within the guidelines,

"but the case involves circumstances where the application of the guidelines would be clearly unreasonable;" or (3) "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c). The instant sentence is the maximum sentence allowed by law. *See* Trial Court Opinion, 8/12/19, at 17. Therefore, it must be affirmed unless it is unreasonable. While reasonableness is not defined in the statute, it "commonly connotes a decision that is irrational or not guided by sound judgment." *Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa. 2007) (citation and quotation omitted).

Appellant argues that his VUFA sentence was excessive because the trial court placed improper emphasis on factors already included in the sentencing guidelines. Specifically, Appellant alleges that the trial court improperly focused on the fact that Appellant committed a homicide with the firearm, the circumstances of that homicide, and the impact his actions had on the victim's surviving family members. Appellant's brief at 17-18.

Appellant has failed to establish that the instant sentence is unreasonable. The certified record demonstrates that the trial court discussed the details of the homicide in order to explain why "this was not an ordinary case of illegal possession of a firearm." Trial Court Opinion, 8/12/19, at 16. Such usage is appropriate, as long as it was not the only factor relied on when imposing a sentence above the guidelines. *See*, *e.g.*, *Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa.Super. 2006) (upholding imposition of an

aggravated range sentence where one of the grounds for doing so was that case deviated from a "typical" case of the offense under consideration).

A review of the sentencing hearing transcript reveals that the trial court properly relied on several factors in electing to impose the maximum sentence allowed by law, all of which demonstrated that the court followed the general principles outlined in § 9721(b), *i.e.*, that the sentence be consistent with the protection of the public, gravity of the offense as it relates to the victim and community, and the rehabilitative needs of the offender. In fashioning the judgment of sentence, the trial court referenced the PSI report; statements made by the victim's mother and sister at sentencing; victim impact statements that were submitted at sentencing; arguments made by the prosecutor and defense attorney; letters submitted in support of Appellant; Appellant's threatening of witnesses; flight from police; and his demeanor on a prison phone call, where Appellant laughed about destroying evidence and eluding U.S. Marshalls. *See* N.T. Sentencing, 3/22/19, at 10-36; Trial Court Opinion, 8/12/19, at 15-16. Based upon all of the evidence it considered, the trial court determined that "a deviation from the sentencing guidelines [was] appropriate." Trial Court Opinion, 8/12/19, at 16.

Our review confirms that the trial court appropriately weighed the circumstances of the crime, along with the impact the crime had on the community and Appellant's failure to show remorse for "his cold and heartless actions." *Id*. We have no license to reweigh the aforementioned factors.

***Macias***, ***supra*** at 778.  Contrary to Appellant's arguments, the trial court clearly stated its reasons for imposing the statutory maximum sentence, offering the following on-the-record explanation for its decision:

> [Appellant] committed the callous murder of [the victim], age 34. There is not evidence of remorse on [Appellant's] part for this murder.  Immediately after the shooting, after shooting [the victim] in the neck and torso, [Appellant] threatened witnesses, to intimidate them from cooperating with the police.
>
> [Appellant] then absconded, forcing U.S. Marshals to locate and detain him.  [Appellant] was heard in a recorded prison phone conversation laughing and joking about destroying incriminating evidence of the murder and his efforts to elude U.S. Marshals. [Appellant] refused to comply with the presentence investigation ordered by the Court.
>
> As indicated, there is little or no evidence of [Appellant's] remorse in the record.
>
> The impact on the community of [Appellant's] crime is immense. And the impact to the victim and his family is immeasurable. [Appellant] shot [the victim] in his neck and torso in cold blood and left him to die in the dark, alone, in an unfamiliar place.
>
> The victim impact statements the [c]ourt has received demonstrate the widespread and lifelong consequences to obviously the deceased and [the victim's] family, who will suffer for the rest of their lives due to [Appellant's] actions. [Appellant's] crimes were particularly offensive to the protection of the public and had a particularly devastating impact on the victim, the victim's family, and the community.
>
> [Appellant] murdered [the victim] over the loss of 445 baggies of heroin.  He demonstrated callousness toward the value of human life.  [Appellant] has shown a lack of remorse.  The gravity of [Appellant's] offenses and the protection of the community are factors which overwhelmingly outweigh [Appellant's] rehabilitative needs.
>
> The Court has reviewed the trial transcript, considered the presentence investigation, and the recommended sentences,

- 15 -

including the sentencing guidelines, letters from the victim's family, letters on behalf of [Appellant] and the evidence presented today at sentencing, and the arguments of counsel, and has determined from all the relevant evidence in the record that a deviation from the sentencing guidelines is appropriate in this case for the reasons previously set forth.

*Id*. at 38-40.

The record establishes that the trial court did not double count factors already ingrained in the sentencing guidelines. Instead, it took into account the relevant factors and explained the reasons for imposing the maximum sentence allowed by law at all of the charges. It found that Appellant had committed an especially heinous act with the firearm, and failed to take responsibility for his actions, which devastated the victim's family and multiple communities. *Id*. at 17. Accordingly, we find that the trial court acted well within its discretion when it sentenced Appellant to the statutory maximum at the VUFA charge.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/20

- 16 -